Turney, J.,
delivered the opinion of the Court.
The decree of the Chancellor rescinding the contracts, one of the 20th day of August, 1849, and the other of the 21st day of July, 1854, is erroneous.
*568 The first is in these words: “Know all men by these presents, that I, Richard Hale, of the county of Jefferson, and State of Tennessee, of the one part, and G. Washington Witt, and Samuel H. Witt, the father of George W. Witt, being present, and agrees that the said G. W. Witt may act as _ though he was of lawful age, of the other part, doth bind themselves in the penal sum of two thousand dollars, mutually to each other, to stand to the condition of the agreement undersigned, for which we bind ourselves and executors, and administrators, in witness, our hands and seals, &c.
“The condition of the above is such, that the above bound George W. Witt hath agreed to live with the said Richard Hale and Margaret Hale, his wife, during their natural lives, and take good care of them, and furnish them in all the necessaries of life, suitable to their age, both in health or in sickness, and be good and obedient to them in all things, so far as is lawful and right, as a son to his father and mother; and said Richard Hale doth, on his part, agree to give the said George W. Witt, for his services, all the land that I hold in the 12th civil district of Jefferson county, and adjoining the lands of Thomas Hazlewood and others, being the land that I now live on; and it shall be the duty of my executors or administrators, so soon after the decease of myself and wife, to make, or cause to be made, a good deed, in fee simple, to the said George W. Witt. In testimony whereof, we have hereunto set our hands and seals, this 20th day of August, A. D., 1849.
*569 In presence of Charles Harrison, Samuel H. 'Witt.
(Signed,) “Richard Hale, [l. s.l
“George W. Witt, [l. s.]”
The second agreement is as follows:
“Articles of Agreement entered into, July 21st, 1854, in the County of Jefferson and State of Tennessee, between Richard Hale, of the one part, and George W. Witt, of the other.
“Whereas, Said Hale, on his part, does agree to give said Witt full possession of the farm which said Hale now lives on, and to have the upper sugar orchard; and to have one-half of the barn, and the north end of the dwelling house and. the kitchen, and one-half of garden, and one-half of a lot on the creek, for a potato patch; all of the above mentioned, said Witt is to have full possession of until death of said Hale and his wife, Margaret Hale.
“Whereas, Said Witt is to give said Hale, each year, one hundred bushels of good sound corn, fifty bushels of good, clean wheat, one hundred dozen of oats, one-half of the present meadow and clover, that is now on hand when cut — the corn to be put in the crib, oats and hay in the barn, wheat in the house; said Witt is to have the use of the wagon and gear for the hauling of said Hale’s wood, and the keeping up of said wagon and gear.
“ The above writing has no interference with the heretofore writing between said Hale and said Witt; but said Witt is to have the farm at their death.
“Whereas, Said Witt is to have possession the 1st day of October.
*570 “Whereas, We set our hands and seals; in the failure of either party, there shall be a forfeit, two hundred dollars. (Signed,)
“Richard Hale, [l. s." “Attest: “George W. Witt, [l. s."
“Jeremiah C. Witt,
“Thomas Richey.”
Both parties are dead, and the suit has been revived in this Court. In April, 1856, Hale filed his bill in the Chancery Court, charging that Witt had failed in .almost every particular to comply with his contracts; that he had grossly maltreated him by words and acts; and asking that the contracts be set aside, and the title to the land be reinvested in complainant, unencumbered with the agreements. The bill alleges that complainant can neither read nor write, and that the first agreement did not read as he expected it to read; and to make the best of a bad bargain, he entered into the second agreement. This, in any event, was a ratification of the first. There is no allegation nor proof of fraud in the obtention of the contract or agreements.
The two writings are, in fact, but one contract — the one on the 21st of July merely ascertaining, as to some articles of necessaries provided for in the first the amount and place of delivery of such articles. The papers make an indented bond between the parties, of the one to sell, and of the other to buy, a tract of land, fixing the terms of payment, and the time of conveyance of the legal title.
In the bill, no ground is assumed, upon which, if proven, a Chancery Court is authorized to rescind or declare void.the contract. There is nothing in the con *571 tract to authorize the exercise of such jurisdiction; nor does the proof make a case calling for its exercise. Eor each of the breaches alleged and proven, the complainant could have maintained his action at law. Under the prayer of the bill, the complainant is entitled to an account against the defendant for his expenditures Jn procuring the means of support, and other things for himself and wife, as provided for in the agreement, and which Witt failed to supply; the defendant to be credited by the value of such as he furnished; the. complainant having a lien upon the land for such balance as may be found due him. The decree of the Chancellor is reversed, and a decree pursuing the direction of this opinion is pronounced.
The cause is remanded to the Chancery Court at Dandridge for further proceedings.